Good morning, I'm John Rhodes from the Missoula Office of the Federal Defenders of Montana. I represent Jose Martinez. We are here today requesting that the court overturn the district court's refusal to grant our motion to suppress. A seizure results when liberty is restrained by a show of authority by a law enforcement officer as judged from a reasonable person's perspective. In this case, my client's car is broken down on one side of a divided four-lane highway. The highway patrol officer in a marked highway patrol car is going the other direction of the highway, sees the car, comes to a stop, comes over the median, pulls in behind the car, is walking toward my client, who is 10 to 15 yards in front of his vehicle, and the officer summons my client back. He summons him. He waved him to come back? He motioned was one word that was used, Your Honor. At one point in the first trial of this matter, the government actually used the word summons. That was the word used by the prosecutor. What did he testify to at the hearing on the motion to suppress? That he motioned or directed. And then later at the trial, the government used the word summons. That's at ER 74. Regardless of the evidence that was presented at the motion to suppress. He directed or motioned him to return. And at that point, Your Honor, a reasonable person would not feel free to leave. But that was not the test at the time. You cite to Luckett, which seems to say if the officer asks the defendant or the man in charge to approach, that that's enough. But there are cases since that time, the Mendenhall case, for instance, that says it's the totality of the circumstances. That's correct, Your Honor. Luckett did, in that case, in Luckett, there was a jaywalker. Two officers saw him. They parked their vehicle. And they motioned or directed the jaywalker to come to him. And this court said once the police officer required a pele to come to the police car, he was seized. So under that case alone, there was a seizure based on the motioning or directing by the highway patrol officer to my client to return. What I was meaning to say is that since Luckett, the law seems to have developed beyond that to require totality of the circumstances, not merely the officer asking him to approach or summoning him. It is a totality standard, Your Honor. But even under a totality standard, all the facts in addition to the directing or motioning or summons show that my client was not free to leave. The officer was in a uniform. He was armed. His car was parked behind my client's car. The officer's car was a marked squad car. The officer honked his horn and activated his lights, got out, went some distance toward my client who was 10 to 15 yards in front of his vehicle. So he's 20 to 25 yards from the officer, and the officer directs him back. Under all those circumstances, no one would feel, at least reasonably feel, they were free to leave. Do we care about the officer's intent and what he was trying to do? No. The only way the officer's intent would be relevant, Your Honor, is if he told my client, you are free to leave. At that point, his intent would be relevant. If he doesn't share that fact, that my client is under no obligation to return, that without that being shared, the officer's subjective intent is completely irrelevant under the case law. The cases beyond Luckett, and actually the cases cited by the district court, actually show that our client, my client, was seized. And before I get to each of those- Did the analysis stop there when he directs him back? Yes, that is a seizure. That is a stop and a seizure. That's a Fourth Amendment moment. Judge Nelson just mentioned we have to consider the totality of the circumstances, not just the waving the guy back. Right, but he's waving him back after he had parked behind his vehicle with his lights activated, and this is an armed officer. Was this in the evening or daylight hours? It was in the daylight hours. It was the middle of a hot, very hot, dry summer day in Montana. On the side of a highway. To the Chan case, Chan Jimenez, but there the officer kept his hand on the gun during the encounter, never offered to help him with his apparently broken down car, and then took the identification papers and didn't give them back. That actually happened here. The officer, after this illegal seizure, because the officer repeatedly conceded at ER 1676 and 217, there was no suspicion, no reasonable suspicion whatsoever. Nonetheless, when the officer took my client's driver's license, he didn't give it back. He took the driver's license, called in the driver's license to do a warrants check. All this is compounding the illegal seizure. Maybe I don't remember correctly. Did he take the license, give it back, and then take it again? I believe, Your Honor, and this isn't entirely clear, but he had the license, or at least he had the information, because he called it in in order to do the warrants check. Yeah, but that, I agree, may not make any difference, but it might. Getting to the district courts, the cases that were viewed from this circuit, the Summers case, the Brown case, the Kim case, that's the cases, those are the cases relied upon in the district court, which, by the way, the district court even uses the wrong legal standard. At ER 24, it says, in this case, Officer Lee made no threats or show of force in his encounter with Martinez. What the district court omits is show of authority. That's what seized Mr. Martinez here. But the district court goes on to cite the Summers case. And in Summers, at 268 F3rd at 687, the court specifically says, nothing prevented him from leaving the scene on foot. Well, here, because the officer did everything he did to position himself, and then summons my client back, he couldn't leave. It would be unreasonable for him to do so. What did the officer say to him at that point when he summoned him back? What's the first thing the officer said? You know, I can't, that's on the video, Your Honor, but he did go immediately to what the officer described as a public assist. Yeah, I looked at the video, and there's the first part is, it doesn't kick in for just right away. Right. But it really looked as if he was seeing if he could be of some help at that initial contact. I would agree, but there's not a, I'm here to help exception to the Fourth Amendment. Pardon me? There's not a, I'm here to help exception to the Fourth Amendment. Oh, okay. So that's, that's irrelevant again. Under- His intent. Excuse me? His intent. Yes, is irrelevant, unless he told my client, you are free to leave. And he never said that. That's undisputed. Later on, when he put him in the rear of the car, and you're starting to run out of time here, he said, you're not under arrest, you know. What does that have to do with anything at that point? Well, he was illegally seized without any suspicion, so that's all consumed by the fact that this should be thrown out at the outset. Plus, at that point- You don't see any necessity to make two individual analysis of the initial encounter. And then, what I thought was, he said, well, let me see your license. I thought it was the second time that he got the license. Passed the fellow down, because he was in the back seat, which I think is a locked position, so that if the seizure didn't occur during the first set of circumstances, there could be quite a question as to whether the seizure occurred during the second sequence of events. I completely agree, Your Honor. You only get to the second set of circumstances if you deem the first seizure to be lawful. Then, of course, that second seizure is also unlawful, or alternatively- The court didn't make any findings as to that second sequence of events. Correct, Your Honor. The findings were all with regard to the first series of events. Correct, Your Honor. And with respect to the second sequence, the officer tried to justify what he did as, I do this for safety in every case. Again, there was nothing particularized about Mr. Martinez that justified taking his license, running a warrants check, putting him in the back of a vehicle where he had no egress. I'm going to reserve my last 90 minutes. That's fine. Thank you. Ms. Stewart. Good morning, Your Honors. My name is Paulette Stewart. I'm an assistant United States attorney in the District of Montana assigned to the Helena office. The issue here is whether an officer who turns on his lights, honks his horn, to get a stranded motorist's attention, is a seizure under the Fourth Amendment. It's the government's position that it is not. And the test here is, what would a reasonable, innocent person think? A reasonable, innocent person would think, I'm already in my stopped vehicle on the side of the highway. There's a highway patrolman turning around to assist me. That's great. He has, the officer initially finds out the defendant has run out of gas. So there are two options. The officer, actually the first option, the officer suggests a push of the car over the hill, as this is someplace on the interstate where drivers frequently run out of gas or have vapor lock. The defendant informs the officer that he has a suspended license. So that option is out the window. The defendant then can either walk to town, which is two to five miles, or accept a ride, which is offered by the officer. Well, why would the officer then ask for the license, if the? To run a warrant. Pardon me? Did you hear the question? Yes, your honor. The officer asked for, I'm sorry. No, you go ahead. I'm just wondering, because the officer asked for the license that the driver said, my license, I'm driving on a suspended license. And the officer decides, OK, then I can't push you into town. But the officer says, well, let me see your license. Why would he, or maybe there's nothing wrong with that. I don't know. What do you have to say about that? Your honor, there is nothing wrong for that. The Supreme Court has said in the ordinary course of anything, an officer is free to ask a person for identification without implicating the Fourth Amendment. Here, the officer is trying to find out who's going to be riding in the back of his vehicle. He already knows this person has a suspended license. But it is also reasonable for an officer to want to know who it is who's going to be riding in the back of his car with him. And that would justify the pat down as well? He wanted to know that he had a harmless person back there? Basically, number one, so that he knows the person isn't armed, can't harm him, since they're in very close proximity. And then also, so he knows who is riding in the back of his scout car. But the officer at the suppression hearing stated unequivocally that he had no reason to believe that Martinez was committing, had committed, or was about to commit an offense. How does that go to the reasonableness of that request? The reasonableness is, number one, officer's safety. Number two, the defendant, although the officer wasn't going to cite him for it, the defendant had already admitted he had a suspended driver's license. Had the officer chosen to, the officer could have cited and arrested the defendant for that. The officer in this case, though, is being very amenable to trying to assist Mr. Martinez and just give him gas, or give him somewhere so he can get a ride, to continue with his day. This isn't a seizure? To what extent does the officer's intent play in determining whether or not there was a seizure? According to the case law, Your Honor, it doesn't actually matter. Doesn't play any, his subjective intent really isn't relevant, is it? That is true. It's objective intent of a reasonable officer. It's also the reasonable innocent person as to whether or not they would believe they were seized. And in this case, a non-initial. What would a reasonable person think with flashing overhead lights on a marked patrol vehicle? The reasonable person would believe lights on a marked patrol vehicle, especially one that has just turned around, is doing it so people notice you stopped on the side of the road. And it was not- He's not committed a traffic violation. What about with the motioning to come back or to signaling the fellow? The reasonable innocent person would believe that that's for the officer to say, hey, what are you doing, can I help? Which is what happened in this case. If Mr. Martinez had contacted somebody and help was on the way, or he knew he was only two miles out of town and someone was going to meet him at the gas station, they would say thanks. Car's broken down. Thank you, I'm out of gas. I'm going to meet somebody at the gas station. I don't need your assistance. Or thank you for stopping, I do need your assistance. It wouldn't have been reasonable for him just to keep on walking down the hill or up the hill, whatever it was, up the hill, I guess. I don't believe a reasonable person would have ignored the officer and walked up the hill. The reasonable person certainly could have, and then the facts of this case would be different in that then the officer may have gotten back in his vehicle, pulled around, and asked what was going on. The real question is whether, excuse me, the real question is whether the reasonable person would have felt free to leave. Officer there, lights on. And you're saying a reasonable person would have felt free to leave at that point? Yes, yes, your honor. All right, thank you. How do you respond to Judge Thompson's questions about the second set of events? After the encounter. Your honor, the second. The asking for the license, the pat down, placing him in the back of the car. The district court, as Judge Thompson pointed out, didn't really make any, give any explanation or findings or, he didn't deal with those issues in any way in the order. The second set of events is basically, the officer only asked for Mr. Martinez's license the one time. And that was as they were getting into the vehicle. After Martinez had accepted the offer for the ride, as the officer told Mr. Martinez, he could no longer push him up the hill because of the suspended license. He couldn't knowingly assist someone in continuing to break the law. In driving with the suspended license. So the ID was asked for as they were getting into the car and as the videotape shows, the 29 check, which evidently is the warrant check, wasn't actually called into until both the officer and Mr. Martinez were already in the car on their way into town. You know, Ms. Stewart, just kind of a, in a way of looking at this, kind of looks like the officer's out there and the fellow's told him he's driving on a suspended license and he's thinking, you know, I think I ought to check this guy out. If he's got a suspended license, he might have some other problems. I'll pat him down, put him in the back seat, and call in his license and we'll see what's going on. But, and that's kind of what happened, isn't it, or? You, in all honesty, Your Honor, I think that's a sinister view of what the officer was doing. I mean, the defendant basically says, the officer says, I'm giving you a ride, you're not under arrest. Basically explains to him that everybody sits in the back seat of his vehicle. And the defendant's reaction is, I might be under arrest after this, I hope I don't have any warrants. That's not the reasonable innocent person's response. The reasonable innocent person who needs gas, who wants a ride to the gas station, says, okay, here's my ID. I've got no problem sitting in the back, and they don't add the second phrase of, jeez, I hope I don't have any warrants. And then it continues with the defendant asking, well, what happens if I have warrants? And the officer replies, well, it depends upon what type of warrants they are as to what happens.  And I know that his subjective intent isn't necessarily relevant, but I think from the circumstances in watching the tape, that's not what he's doing. It's not subterfuge. On the tape, I noticed the officer, very polite, he's kind of low key. There's nothing really aggressive about anything he's doing, on the tape, anyway. Well. Correct. Correct, there's no hand on the gun, there's no yelling, there's nothing. And he even says in the hearing transcript, he used nothing but a conversational tone. There wasn't any reason for him to use anything but a conversational tone. Thank you, Ms. Stewart. Thank you, your honors. Judge Nelson, with respect to Chan Jimenez, there the officer did have his hand on this weapon the entire time. And he never asked anything about, can I help you? That doesn't mean that that's the standard necessary to affect a seizure. That was just the totality of the circumstances. In that case, here we have a different totality of circumstances. But again, it would, I give lectures to high school kids and junior high kids and actually schools where they take kids who are having trouble. And they go there to try to rehabilitate them. I basically give these know your rights lectures. I can't believe I could tell a kid in these circumstances that this happens to them, they would be free to go about whatever their business was and walk away. And going about business is actually a phrase that's used in Chan Jimenez. Here, Jose Martinez's business was walking toward town, and the officer, after he did everything else, summons him back. He wasn't free to go about his business. He was seized at that time. He was further seized with no reasonable suspicion when he had to give his driver's license, when it was ran for a warrants check. And again, this officer may have his general personal policies, but that doesn't create an exception to the Fourth Amendment. For all those reasons, Your Honor, we request that the court reverse the district court's suppression ruling and remand this case to the district court to proceed accordingly. Thank you, counsel. Thank you for the arguments. The matter will be submitted at this time.
judges: D.W. Nelson, Thompson, Paez